IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| KIMBERLY-CLARK CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>BABACK NELSON,<br><br>        Defendant. | Civil Action No. |

## **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Kimberly-Clark Corporation ("Kimberly-Clark" or "the Company"), by its undersigned attorneys, for its complaint in this action against Defendant Baback Nelson ("Nelson"), alleges and shows as follows:

## **Summary Of Action**

This is an action seeking both equitable relief, damages and other legal relief to enforce Defendant's contractual promise not to solicit Plaintiff's employees, which promise is expressed in a written agreement Defendant executed in relation to his former employment with Plaintiff.

## **The Parties**

1. Kimberly-Clark is a corporation organized under the laws of Delaware with its headquarters and principal place of business in Dallas, Texas. Kimberly-Clark operates a substantial manufacturing facility in Beech Island, Aiken County, South Carolina, at which it

1

employs approximately 1,300 persons, and contracts with another 400 to 500 other individuals for services.

2. Kimberly-Clark is engaged in the business of manufacturing various health and hygiene personal care products, including toilet tissue, facial tissue, paper towels, and other products. At its Beech Island, South Carolina mill ("Beech Island mill") specifically, Kimberly-Clark manufactures toilet and facial tissue products in addition to other products.

3. Nelson is an individual who, upon information and belief, currently resides at 125 Tuckers Valley Drive, Winchester, Virginia 22603. From approximately June 2007 through August 2009, Nelson was a resident and citizen of the State of South Carolina.

**Jurisdiction and Venue**

4. This Court has personal jurisdiction over the defendant, Baback Nelson, because he recently was a citizen of South Carolina, he has engaged in substantial and not isolated activities in this State, and because he transmitted communications into this State that form the basis of the claims asserted and which resulted in damages to Kimberly-Clark in this State.

5. Venue of this action is proper in the Aiken Division of this Court because the communications were with Kimberly-Clark employees working in Aiken County, and which has resulted in damages to Kimberly Clark and its operations in Aiken County, South Carolina pursuant to SOUTH CAROLINA CODE § 36-2-803 (1976) of the South Carolina statutes.

**Background Facts**

6. Kimberly-Clark continuously employed Nelson from approximately October 1997 through October 2009, in various management roles, at various of its locations. From approximately June 2007 through August 2009, Kimberly-Clark employed Nelson at and assigned him to its mill in Beech Island, South Carolina.

7. On or about April 23, 2004, Nelson and Kimberly-Clark entered into a "CONFIDENTIAL INFORMATION AND BUSINESS IDEAS, INVENTIONS AND DEVELOPMENTS AGREEMENT," (hereinafter referred to as the "April 2004 Agreement").

8. Nelson held various jobs during his tenure at Kimberly-Clark's Beech Island mill. First, he served as an Operations Team Leader, with responsibilities including providing operations team leadership to attain safety, quality, productivity, housekeeping, logistics, asset management, customer service, human resources and cost objectives.

9. Next, in approximately October 2007, Kimberly-Clark promoted Nelson to Operations Team Manager I. In that position Nelson had overall responsibility for the "CTEC" converting operation at the Beech Island mill, an operation with assets worth over $125,000,000, and an annual value of products produced over $350,000,000. In this role, Nelson supervised over 160 employees, and served on the mill's top leadership team representing the highest-ranking management personnel at the facility.

10. Nelson served as the Operations Team Manager I until approximately August 2009, when Nelson was made an Operations Consultant III assigned to the Company's mill in Chester, Pennsylvania.

11. In all the positions held by Nelson during his tenure at Kimberly-Clark's Beech Island mill, Nelson had access to and gained knowledge of a wide variety of confidential business information of Kimberly-Clark, including, but not limited to, information concerning business plans and strategies, costs of sales and profit margins, inventories, manufacturing technologies and capabilities, and information regarding Kimberly-Clark's employees.

**The Nonsolicitation Agreement**

12. On or about June 6, 2005, Nelson and Kimberly-Clark entered into a "CONFIDENTIALITY, NONSOLICITATION AND ASSIGNMENT OF BUSINESS IDEAS AGREEMENT," (hereinafter referred to as the "Nonsolicitation Agreement"), a true and correct copy of which is attached hereto as Exhibit A and incorporated herein.

13. The Nonsolicitation Agreement recites that the consideration for it included Nelson's ongoing employment, the Company's agreement to provide Nelson with access to the Company's "Confidential Information" and "Trade Secrets" (as defined in the Nonsolicitation Agreement), access to customers, and other promises contained in the Agreement. (Ex. A) One of the promises was Kimberly-Clark's acknowledgment that the Nonsolicitation Agreement would supersede and therefore relieve Nelson of his obligations under the April 2004 Agreement. (*Id.*)

14. After he signed the Nonsolicitation Agreement, Nelson received from Kimberly-Clark employment and related compensation and benefits for approximately 4 and ½ additional years, as well as access to the Company's Confidential Information and Trade Secrets.

15. The Nonsolicitation Agreement contains Nelson's promise to not disclose the Company's Confidential Information and/or Trade Secrets and to not use it to the benefit of any person or entity other than the Company. (Ex. A, para. 2(a), p. 2) This promise expressly binds Nelson for two (2) years after the termination of his employment with respect to Confidential Information that does not constitute a Trade Secret, and for Trade Secret information binds Nelson for so long as the information at issue remains a Trade Secret. (*Id.*)

16. The Nonsolicitation Agreement contains a provision in which Nelson promised not to solicit or otherwise encourage certain Kimberly-Clark employees to leave the Company's employment. Relevant portions of that provision state as follows:

4

      3.    **Nonsolicitation Obligations**

> During the term of my employment by the Company and for a period of two (2) years following the termination of such employment, regardless of the reason for or manner of termination, I shall not, either directly or indirectly:
>
> …
>
> (b)    within the United States, solicit or encourage any person employed by the Company, with whom I had material contact during the last twelve (12) months of my employment with the Company, to leave the Company's employment.

(Ex. A, pp. 2-3)

      17.    Nelson expressed his agreement in the Nonsolicitation Agreement that in the event of an anticipated or actual breach by him of his confidentiality or nonsolicitation obligations:

> Kimberly-Clark shall be entitled to a temporary restraining order and to temporary injunctive relief to prevent or terminate such anticipated or actual breach . . .

(Ex. A, para. 7(b), pp. 3-4)

      18.    The Nonsolicitation Agreement also confirms that nothing in it shall be construed to limit any permanent relief or damages to which Kimberly-Clark may be entitled as a result of a breach.  (Ex. A, para. 7(b), pp. 3-4)

      19.    Nelson also promised to reimburse Kimberly-Clark for all its costs incurred to enforce the Nonsolicitation Agreement, including, but not limited to, all attorneys' fees.  (Ex. A, para. 7(c), p. 4)

      20.    Kimberly-Clark has satisfied all of its obligations to Nelson pursuant to the Nonsolicitation Agreement.

### The Termination Of Nelson's Employment With Kimberly-Clark

21. Nelson resigned his employment with Kimberly-Clark effective November 1, 2009.

22. Nelson informed a human resources professional at the Company's Chester mill that he was taking a job with another company, but he did not mention that his new employer was a direct competitor of Kimberly-Clark.

### Nelson's Employment With Mercury Paper

23. In approximately November 2009, Nelson became employed by Mercury Paper, Inc. (hereinafter referred to as "Mercury Paper"). Upon information and belief, Mercury Paper employs Nelson in a management position.

24. Mercury Paper is a relatively new, but rapidly growing, manufacturer of paper towels and tissue products. It is located in Strasburg, Virginia, but publicly declares that its "goal is to become one of the leading producers of paper products in North America. We have plans in place to build multiple production facilities across the continent. Mercury Paper, Inc. will provide superior paper products for North American consumers . . ." http://www.mercurypaper.com/index.html

25. Mercury Paper is a direct competitor of Kimberly-Clark with respect to tissue products and paper towels, products of the types that Nelson was responsible for at Kimberly-Clark's Beech Island mill.

### Nelson's Solicitation Of Kimberly-Clark Employees

26. After becoming employed by Mercury Paper, Nelson has actively participated in the recruitment of multiple Kimberly-Clark employees in circumstances in which

6

Nelson has solicited and/or encouraged them to leave their employment with Kimberly-Clark to join its competitor, Mercury Paper.

27. For example, in November 2009 Nelson actively engaged in numerous communications with Jody Lakey, who was then employed by Kimberly-Clark as an Operations Consultant at its Beech Island mill. Among other things, Nelson helped arrange for Lakey's travel to Mercury Paper for interviews. As part of his recruitment efforts, Nelson directed email and perhaps other communications to Lakey into South Carolina.

28. During his last twelve (12) months of employment with Kimberly-Clark, Nelson had contact with Lakey due to the fact that Lakey reported to Nelson from approximately June 2008 until approximately August 2009. In February 2009, Nelson prepared and delivered a performance evaluation to Lakey that addressed Lakey's work activities in detail, documented Lakey's strengths, and offered career development direction, among other things.

29. As a result of his supervision of Lakey, Nelson learned a variety of important information regarding Lakey that Kimberly-Clark had kept confidential, such as information concerning Lakey's career history and path, his job performance strengths and weaknesses, his training and skill base, and the scope and nature of the Kimberly-Clark confidential information known by Lakey.

30. Lakey resigned his employment with Kimberly-Clark on or about November 17, 2009, and accepted employment with Mercury Paper. Lakey only offered Kimberly-Clark two weeks' notice of his departure.

31. Similarly, also in November 2009, Nelson directly or indirectly participated in the solicitation of Brian Mattingly, who was then employed by Kimberly-Clark as

an Asset Leader III at Kimberly-Clark's Beech Island mill. In that role, Mattingly had overall responsibility for the staffing and efficient operation of a particular production line at the mill.

32.     During his last twelve (12) months of employment with Kimberly-Clark, Nelson had contact with Mattingly due to the fact that Mattingly reported to Nelson from approximately August 2008 until approximately August 2009. In February 2009, Nelson prepared and delivered a performance evaluation to Mattingly that addressed Mattingly's work activities in detail, described the business results achieved by the production line assigned to him, documented Mattingly's strengths, and offered career development direction, among other things.

33.     As a result of his supervision of Mattingly, Nelson learned a variety of important information regarding Mattingly that Kimberly-Clark had kept confidential, such as information concerning Mattingly's career history and path, his job performance strengths and weaknesses, his training and the scope and nature of the Kimberly-Clark confidential information known by Mattingly.

34.     Mattingly resigned his employment with Kimberly-Clark on or about November 17, 2009, and accepted employment with Mercury Paper. Mattingly only offered Kimberly-Clark two weeks' notice of his departure.

35.     Since Nelson quit his employment with Kimberly-Clark, he has solicited and/or encouraged other employees of Kimberly-Clark to leave their employment with Kimberly-Clark, in addition to Lakey and Mattingly.

### BREACH OF CONTRACT (Nonsolicitation Agreement)

36.     Kimberly-Clark incorporates by this reference and realleges as if fully set forth herein the foregoing allegations of paragraphs 1 through 35 of the Complaint.

37. Nelson breached the Nonsolicitation Agreement by soliciting or encouraging Lakey, Mattingly and/or others to terminate their employment with Kimberly-Clark.

38. Nelson breached the Nonsolicitation Agreement by using to the benefit of Mercury Paper his knowledge of Kimberly-Clark's Confidential Information regarding Lakey, Mattingly and other employees.

39. Nelson's breaches have caused Kimberly-Clark to suffer damages, including but not limited to the value of the investments made in the training and development of Lakey and Mattingly, the business interruption costs of the resignations of Lakey and Mattingly on short notice, and the costs to recruit, hire and train replacements for Lakey and Mattingly.

40. Further, unless enjoined by this Court, Nelson is likely to continue breaching the Nonsolicitation Agreement. Mercury Paper, which proclaims itself to be a rapidly growing producer of products that compete directly with core products of Kimberly-Clark, has a need for rapid recruiting and hiring of persons skilled in and knowledgeable about the research, development, production, sales and/or marketing of paper towels and paper tissue personal care products, and numerous Kimberly-Clark professionals have been recruited and hired by Mercury Paper in recent months.

41. Nelson's past, ongoing, and likely future breaches of the Nonsolicitation Agreement with Kimberly-Clark are likely to cause irreparable harm to Kimberly-Clark for which no adequate remedy at law exists.

WHEREFORE, Plaintiff Kimberly-Clark Corporation respectfully prays for entry of judgment in its favor and an award of relief from the Court as follows:

A. A preliminary injunction prohibiting Defendant Baback Nelson, and all those acting in concert and active participation with him, through and including a trial on this

matter, or further order of this Court, whichever comes first, from directly or indirectly soliciting or encouraging any person employed by Kimberly-Clark (with whom Nelson had material contact in the last 12 months of his employment with Kimberly-Clark) to leave employment with Kimberly-Clark;

    B. A permanent injunction prohibiting Defendant Baback Nelson, and all those acting in concert and active participation with him, through and including a trial on this matter, or further order of this Court, whichever comes first, from directly or indirectly soliciting or encouraging any person employed by Kimberly-Clark (with whom Nelson had material contact in the last 12 months of his employment with Kimberly-Clark) to leave employment with Kimberly-Clark;

    C. An award of damages in an amount to be proven at trial;

    D. An award to Kimberly-Clark of its costs and disbursements of this action, including actual attorneys fees incurred in its efforts to enforce the Nonsolicitation Agreement; and

    E. An award of such other and further relief as the Court may deem just and equitable.

            s/ Sue Erwin Harper
            William C. Hubbard, Federal Bar No.: 1988
            Sue Erwin Harper, Federal Bar No.: 737
            NELSON MULLINS RILEY & SCARBOROUGH LLP
            1320 Main Street/ 17th Floor
            Post Office Box 11070 (29211)
            Columbia, SC 29201
            Telephone: (803) 799-2000
            Facsimile: (803) 255-9440
            william.hubbard@nelsonmullins.com
            corky.harper@nelsonmullins.com

            Attorneys for Plaintiff
            KIMBERLY-CLARK CORPORATION

Columbia, South Carolina

January 6, 2010

Of Counsel:

Bernard J. Bobber
Sara J. Bolden
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: (414) 297-5803 (BJB)
Telephone: (414) 297-5552 (SJB)
Facsimile: (414) 297-4900
bbobber@foley.com
sbolden@foley.com